**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MOHAMMADBAGHER MAHMOODI, | |
| Plaintiff, | |
| v. | Civil Action No. 24-2010 (BAH) |
| STEFANIE ALTMAN-WINANS, *et al.*, | Judge Beryl A. Howell |
| Defendants. | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff MohammadBagher Mahmoodi, a citizen of Iran residing in Oman, seeks to

compel defendants Stefanie Altman-Winans, Deputy Chief of Mission at the U.S. embassy in

Qatar, and Marco Rubio, Secretary of the U.S. Department of State, in their official capacities

(collectively, "defendants"), to adjudicate his nonimmigrant visa application, for which his wife

is a derivative beneficiary, when the application had been in administrative processing for just

over four months at the time plaintiff initiated this lawsuit.  *See* Compl. ¶¶ 14-28, ECF No. 1.[1]

Plaintiff claims that defendants have unreasonably delayed adjudication of his visa application,

in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), and the Mandamus

Act, 28 U.S.C. § 1361.  *Id.* ¶¶ 30-51.  Defendants now move to dismiss for lack of jurisdiction

under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim

under Rule 12(b)(6), Defs.' Motion to Dismiss ("Defs.' MTD") at 1, ECF No. 7, but explicitly

disavow moving to dismiss plaintiff's claims on the basis that he has insufficiently claimed

---

[1]    Although plaintiff originally named Natalie A. Baker, former Deputy Chief of Mission at the U.S. embassy in Qatar, and Anthony Blinken, former Secretary of the U.S. Department of State, current Deputy Chief of Mission Stefanie Altman-Winans and Secretary of State Marco Rubio are "automatically substituted as [parties]" in their place, pursuant to Federal Rule of Civil Procedure 25(d).

unreasonable delay in the adjudication of his visa application, Defs.' Mem. Supp. MTD ("Defs.' Mem.") at 2 n.1, ECF No. 7.  For the reasons explained below, defendants' motion to dismiss plaintiff's complaint is granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim of unreasonable delay under *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1994).

## I.    BACKGROUND

A review of the statutory and regulatory background underlying the claims is below, followed by a summary of the factual and procedural history of this case.

### A.    Staturoy and Regulatory Background

The Immigration and National Act ("INA") allows for issuance of nonimmigrant worker visas.  8 U.S.C. § 1202(c).  First, employers may file an I-129 petition for an O-1 visa, reserved for aliens of extraordinary ability or achievement.  8 C.F.R. § 214.2(o)(6).  The applicant for such visa must then file an application on either a Form DS-180 or, at the direction of a consular officer, Form DS-156, with the United States Customs and Immigration Services ("USCIS").  22 C.F.R. § 41.103(a)(1).  After the applicant appears for an in-person interview before a consular officer, 22 C.F.R § 41.102(a), and properly completes and executes the visa application, the consular officer may then choose to issue, refuse, or discontinue granting the visa, 22 C.F.R. § 41.121(a).

An "applicant [can] overcome a refusal . . . in two instances: when additional evidence is presented, or administrative processing is completed."  9 FAM § 306.2-2(A)(a).  With respect to the former, "[w]hen the applicant has presented additional evidence to attempt to overcome a prior refusal," the consular office "re-open[s] and re-adjudicate[s] the case by overcoming the prior INA 221(g) refusal and determining whether the applicant is eligible for a visa."  *Id.* §

306.2-2(A)(a)(1).  As to the latter, "[a] prior INA 221(g) refusal entered for administrative

processing may be overcome" if the consular officer "determine[s] administrative processing is

completed" and receives any additional "needed information."  *Id.* § 306.2-2(A)(a)(2)(a).

### B.    Factual Background

In February 2024, USCIS approved an I-129 visa application for an O-1 visa by

BionovaGenix, a start-up company studying treatments for autoimmune diseases.  Compl. ¶¶ 1,

4.  This application was filed on behalf of plaintiff MohammadBagher Mahmoodi, a citizen of

Iran, *id.* ¶ 15, and his wife, Ensieh Shahvazian, who is a derivative beneficiary of plaintiff's visa,

*id.*  Both plaintiff and his wife submitted their DS-160 nonimmigrant visa applications shortly

thereafter and attended an interview at the U.S. Embassy in Qatar on March 7, 2024.  *Id*. ¶¶ 15-

18.  Following this interview, plaintiff and his wife were informed their visa applications had

been "refus[ed]" and "placed in administrative processing," *id*. ¶¶ 21-22, pursuant to Section

221(g) of the INA, *see* 8 U.S.C. § 1201(g).  Despite numerous inquiries, plaintiff has received no

meaningful response.  Compl. ¶ 24.  As of October 8, 2024, plaintiff's application for an

immigrant visa to the United States has been "refused," Pl.'s Opp'n Defs.' MTD ("Pl.'s Opp'n"),

Ex. E, ECF No. 10, and remains subject to additional administrative processing before a final

decision is rendered, *see* Pl.'s Opp'n, Ex. E ("If you were informed by the consular officer that

your case was refused for administrative processing, your case will remain refused while

undergoing such processing. You will receive another adjudication once such processing is

complete.").

In the interim, plaintiff alleges that the delay in receiving a final decision on his

immigrant visa application has caused him and his wife to "experience[] . . . severe personal,

emotional, and financial hardship."  Compl. ¶ 40.  Plaintiff "has been unable to start his new job

position," *id.* ¶ 4, and is currently "not earning an income because he has not been able to start his new position in the United States," *id.* ¶ 5. Plaintiff's wife was accepted to a PhD program but was "unable to complete her application due to the delay and uncertainty surrounding their immigration status" and remains unemployed. *Id.* ¶ 4. As such, their "finances continue to deteriorate as the delay remains ongoing." *Id.* at 5.

### C. Procedural History

On July 10, 2024, just over four months after plaintiff's visa application was placed in "administrative processing," plaintiff filed a two-count complaint to compel defendants to adjudicate his visa application, which would also result in compelling action on his wife's application as she is a derivative beneficiary of plaintiff's visa application. *Id.* ¶¶ 43, 51. Plaintiff maintains that defendants retain jurisdiction over his visa application and alleges that they have a "nondiscretionary duty to review and adjudicate [his] and his wife's visa applications," *id.* ¶ 33, which duty he seeks to enforce with relief under the APA, *id.* ¶¶ 30-43, and the Mandamus Act, *id.* ¶¶ 44-51. In his prayer for relief, plaintiff requests adjudication of his and his wife's visa application "within fifteen (15) calendar days of this [Court's] order or as soon as reasonable possible," attorney's fees and costs, and "such other and further relief as may be appropriate." *Id.* ¶ 53.

On September 24, 2024, defendants moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defs.' MTD at 1, which motion plaintiff opposes, *see* Pl.'s Opp'n.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "[F]orbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), federal courts thus "have an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute,'" *James Madison Ltd. By Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)).  Absent subject-matter jurisdiction, a case must be dismissed.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006); FED R. CIV. P. 12(b)(1), 12(h)(3).

When reviewing a motion to dismiss under Rule 12(b)(1), the court must "assume that the complaint states a valid legal claim," *Huron v. Cobert*, 809 F.3d 1274, 1278 (D.C. Cir. 2016), and "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).  Furthermore, "[a court] may consider materials outside the pleadings to determine [its] jurisdiction."  *Id.* at 866 n.7.

### B.    Motion to Dismiss for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but "that allow[] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57). In deciding a motion under Rule 12(b)(6), a court must accept all factual allegations as true, "even if doubtful in fact," *Twombly*, 550 U.S. at 555, and "construe the complaint 'in favor of the plaintiff,'" *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023) (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)). Courts, however "need not accept inferences . . . not supported by the facts set out in the complaint, nor must the court accept legal conclusions." *Id.* at 476 (quoting *Hettinga*, 677 F.3d at 476). In determining whether a complaint fails to state a claim, although a court must review the whole complaint, *Twombly*, 550 U.S. at 555, courts are limited to "consider[ing] only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1271-72 (D.C. Cir. 2019) (second alteration in original) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)).

## III.    DISCUSSION

Defendants advance two arguments in support of dismissal: (1) that plaintiff fails to identify a discrete, non-discretionary duty to adjudicate his visa application; and (2) that the consular non-reviewability doctrine bars judicial review. Defs.' Mem. at 2. This motion is resolved on alternative grounds, as addressed below.

### A.    Non-Discretionary Duty

"[T]o proceed under either the APA or the Mandamus Act based on a claim of an 'agency's unreasonable delay,'" *Asadi v. U.S. Dep't of State*, No. 23-cv-1953 (RC), 2024 WL 3835409, at *5 (D.D.C. Aug. 15, 2024) (quoting *Arabzada v. Donis*, 725 F. Supp. 3d 1, 11 (D.D.C. 2024), a plaintiff "must first allege that the agency 'failed to take a discrete agency

action that it is required to take,'" *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340

(D.C. Cir. 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004)).  *See also*

*Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) (stating that "standards

for obtaining relief" under the Mandamus Act and the APA "are essentially the same");

*Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 19 (D.D.C. 2022) ("What plaintiffs must show to

establish a mandamus claim is similar to what they must show . . . under the APA, as in both

instances plaintiffs must establish that the government has a clear, nondiscretionary duty.").

Defendants argue that plaintiff's claims are not reviewable here because "[p]laintiff cannot

identify a clear, non-discretionary duty requiring a consular office to take any action on the Visa

Application now that it has been refused under INA Section 221(g)."  Defs.' Mem. at 5.  To

bolster their argument, defendants claim the unpublished D.C. Circuit decision *Karimova v.*

*Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) is "dispositive of this case."

Defs.' Mem. at 6.

        In *Karimova*, the D.C. Circuit held that the plaintiff had failed "adequately [to] allege[]

that the consular officer has [] a duty" to adjudicate her visa application conclusively, where

plaintiff had "relie[d] on Section 555(b) of the APA"—"and *only* Section 555(b)"—"as the

source of the consular officer's alleged duty," because "Section 555(b) does no such thing."

*Karimova*, 2024 WL 3517852, at *1, *3-6 (emphasis in original); *see* 5 U.S.C. § 555(b)

(providing that "each agency shall proceed to conclude a matter presented to it . . . within a

reasonable time").  The Circuit reasoned that this is not "a specific, unequivocal command to act

that would justify mandamus or [APA] Section 706(1) relief every time someone complained of

delay."  *Id.* at *4 (citation and internal quotation mark omitted).  The Court pointed to three

additional considerations that reinforced its conclusion: (1) "consular officers have broad

discretion when adjudicating visa applications," *id.*; (2) plaintiff's "'matter' ha[d] already been 'conclude[d],'" *id.* (quoting 5 U.S.C. § 555(b)); and (3) plaintiff's claim arose "within a field that is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations and the war power," which "types of claims generally fall outside the Judicial Branch's wheelhouse," *id.* at *5 (cleaned up).

*Karimova* may "cast[] some doubt on whether consular officers are indeed subject to a discrete, mandatory duty to timely complete administrative processing after a visa application has already been 'refused.'" *Baygan v. Blinken*, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *5 n.1 (D.D.C. Aug. 8, 2024). Contrary to defendants' urging to treat *Karimova* as "dispositive of the claims" here, Defs.' Mem. at 6, unlike *Karimova*, plaintiff relies on 8 U.S.C. § 1202(d) of the INA, in addition to Section 555(b), as the source of defendants' alleged non-discretionary duty, *see* Compl. ¶ 33.

In any event, to avoid unnecessarily "enter[ing] into the legal quagmire of differing views on the . . . issue," *Asim v. Blinken*, No. 24-cv-638 (JEB), 2024 WL 3338778, at *3 (D.D.C. July 8, 2024), "the appropriate action here" is "[a]ssuming, without deciding, that a mandatory non-discretionary agency action applies in the form of the statutory requirement that '[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer," *Hamdan v. Oudkirk*, No. 24-cv-1001 (BAH), 2024 WL 4553983, at *7 (D.D.C. Oct. 23, 2024) (quoting 8 U.S.C. § 1202(b)). *See Karimova*, 2024 WL 3517852, at *6 ("[L]ocating [USCIS's] 'nondiscretionary duty' to adjudicate visa petitions in a special provision of the immigration code, not Section 555(b)." (quoting *Da Costa*, 80 F.4th at 340)); *see also Asadi*, 2024 WL 3835409, at *5 ("[A]ssum[ing] favorably to Plaintiff that her complaint identifies a clear, non-discretionary duty [even though] Plaintiff largely relies on section 555(b) of the APA as the source of such a duty

[since] her claims fail on the merits." (internal citations omitted)); *Giza v. Blinken*, No. 23-cv-1641 (CRC), 2024 WL 3967284, at *4 (D.D.C. Aug. 27, 2024) (holding the same and noting "[t]he Court is mindful of *Karimova* . . . however, [plaintiffs] also invoke more specific provisions in the INA—namely, 8 U.S.C. § 1202(b)," an identically worded provision to Section 1202(d)). Without clear, binding precedent foreclosing plaintiff's position that the INA imposes a non-discretionary duty on the government to adjudicate specific visas, the assumption of reviewability permits consideration of the merits of plaintiff's claims. *See Adan v. Blinken*, No. 24-cv-591 (JDB), 2024 WL 5168521, at *2 n.5 (D.D.C. Dec. 19, 2024) (arguing in a similar case that "courts may address the merits of a case when that course of action 'avoid[s] a doubtful issue of statutory jurisdiction'" (quoting *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008))); *see, e.g.*, *Niyomwungere v. Blinken*, No. 24-cv-1990 (APM), 2024 WL 5075827, at *3 (D.D.C. Dec. 11, 2024) (post-*Karimova* suit holding that "the court joins other courts in this District that have assumed without deciding that a plaintiff made out a claim of a clear and non-discretionary duty and proceeds to evaluate the delay"); *Giza*, 2024 WL 3967284, at *4 ("The Court need not decide whether the INA or its regulations impose this duty because, either way, the [plaintiffs] have not plausibly alleged that the delay in adjudicating their visa applications is unreasonable."); *Sereshti v. Gaudiosi*, No. 24-cv-1288 (BAH), 2024 WL 4625802, at *6 (D.D.C. Oct. 30, 2024) (same); *Baygan*, 2024 WL 3723714, at *5 (same).

### B.    Consular Nonreviewability

Defendants further assert that plaintiff's suit "runs headfirst into the consular nonreviewability doctrine," Defs.' Mem. at 9, which "shields a consular officer's decision to issue or withhold a visa from judicial review," *id.* at 10 (emphasis omitted) (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021)). "[T]wo narrow exceptions" to the

doctrine exist: (1) when the denial of a visa "burdens the citizen's constitutional rights," and (2) "when a statute explicitly authorizes judicial review." *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023), *cert. denied*, No. 23-348, 2024 WL 3259699 (U.S. July 2, 2024) (internal quotation marks omitted) (quoting *Baan Rao*, 985 F.3d at 1024-25).

Defendants contend that because "[a] consular officer has decided to withhold issuing a visa," this "ends the matter." Defs.' Mem. at 12. The argument is predicated on the defendants' assumption that the consular officer's "refusal" of the plaintiff's application at the U.S. Consulate General in Doha in March 2024 is "final and conclusive." *Id.* at 10 (quoting *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2023)). Defendants' arguments are plainly contrary to plaintiff's allegations that the "refusal" was "not a final decision" because he was informed *multiple times* that his case was active and "under administrative processing." Compl. ¶¶ 19, 22, 25-26.

Defendants passingly mention the near-universal consensus of Judges on this Court, including the undersigned, of holding the doctrine does not apply when a consular officer has refused a visa application under 8 U.S.C. § 1201(g), but the application remains in a state of administrative processing. Defs.' Mem. at 11-12 (citing *Janay v. Blinken*, No. 23-cv-3737 (RDM), 2024 WL 342379, at *8 (D.D.C. July 16, 2024)); *see, e.g.*, *Sereshti*, 2024 WL 4625802, at *4 ("[T]he consular officer's 'refusal' of plaintiff's visa application subject to further 'administrative processing' may not have been a final decision on his application, but rather a 'temporary measure, signaling that processing [was] ongoing.'" (second alteration in original)); *Baygan*, 2024 WL 3723714, at *4 (post-*Karimova* suit concluding "that refusal of an application for administrative processing is a temporary, interim status and that the consular nonreviewability doctrine does not apply under the final-decision grounds raised by the State

10

Department"); *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d. 1, 16 (D.D.C. 2022) (finding that the consular nonreviewability doctrine did not apply because "the factual allegations in the complaint, taken as true at this stage in the proceedings, indicate that no final decision has been made").  Instead, defendants, again, rely on *Karimova*, 2024 WL 3517852, arguing its holding "necessitates an end" to a finding that consular nonreviewability does not bar plaintiff's claims.  Defs.' Mem. at 11-13.

In *Karimova*, a consular officer "reviewed [plaintiff's] application and interviewed her," "officially 'refused' her application," and yet "placed her application in administrative processing."  *Karimova*, 2024 WL 3517852, at *2 (internal quotation mark omitted).  The D.C. Circuit affirmed the dismissal of plaintiff's complaint, which alleged that "the consular officer . . . 'breached [her] duty . . . to make a final decision' on [plaintiff's] application 'within a reasonable time,'" holding that once "a consular makes an official decision refusing to issue a visa," that visa "remains officially refused."  *Id.* at *2.  Thus, construing the plaintiff's claim to be a request to order the consular officer to "make yet another 'final decision' on [plaintiff's] already-refused visa application," the Circuit found the plaintiff had "not identified an adequate legal basis for that duty."  *Id.* at *6.

*Karimova* "suggests that once 'a consular officer reviewed Plaintiff's application, interviewed her, and ruled that no visa would be granted,' Plaintiff's visa application was 'officially refused' notwithstanding its later placement in administrative processing."  *Asadi*, 2024 WL 3835409, at *4 (brackets omitted) (quoting *Karimova*, 2024 WL 3517852, at *4). *Karimova* thus leaves uncertain the case law in this District rejecting application of the consular nonreviewability doctrine where, as here, a plaintiff's application has been "refused" but simultaneously—and confusingly—still subject to further administrative processing.  To be sure,

some Judges on this Court have taken *Karimova* to repudiate those decisions.  Defs.' Mem. at 12

(citing *Yaghbounezhad v. Stufft*, 734 F. Supp. 3d 87 (D.D.C. 2024), and *Sedaghatdoust v.*

*Blinken*, 735 F. Supp. 3d 1 (D.D.C. 2024)); *see also Amjad v. Schofer*, No. 24-cv-1773 (CJN),

2024 WL 4416984, at *1 (D.D.C. Oct. 4, 2024).[2]  These cases are not binding and have been

found unpersuasive by other Judges on this Court, including the undersigned.  *See, e.g.*, *Hamdan*,

2024 WL 4553983, at *4 n.2; *Janay*, 2024 WL 3432379, at *9-10; *De Belinay v. Mayorkas*, No.

24-cv-240 (CRC), 2025 WL 671120, at *4 (D.D.C. Mar. 3, 2025).

    *Karimova* does not, as defendants urge, "end . . . [the] debate," Defs.' Mem. at 6, and

require disposal of this case on consular nonreviewability grounds.  First, taking the plaintiff's

allegations as true, *see Ziglar v. Abbasi*, 582 U.S. 120, 127 (2017), the consular officer's

"refusal" of plaintiff's visa application subject to further "administrative processing" was a

"temporary measure, signaling that processing [was] ongoing."  Compl. ¶ 22.  The facts of this

case are in material respects indistinguishable from post-*Karimova* suit *Fallahi v. Bell*, where

plaintiff's application for a nonimmigrant worker visa had similarly been refused, "placed in

'administrative processing,'" and plaintiff received "no meaningful status updates."  No. 23-cv-

---

[2]    Defendants cite *Department of State v. Muñoz*, 602 U.S. 899 (2023) and *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021), to support their argument that the consular nonreviewability doctrine bars review of plaintiff's claim, but these cases are inapposite.  In *Baan Rao*, the D.C. Circuit addressed "whether a final decision on the merits of a visa application precluded judicial review," not whether, as here, "the doctrine of consular nonreviewability preclude[s] judicial review of 'refused' visa applications that remain subject to additional administrative processing."  *Isse v. Whitman*, No. 22-cv-3114 (BAH), 2023 WL 4174357, at *5 (D.D.C. June 26, 2023); *see also Baygan v. Blinken*, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *5 (D.D.C. Aug. 8, 2024) (collecting cases and concluding that "*Baan Rao* says nothing about the judicial reviewability of visa processing delay occurring <u>before</u> an officer has made a final decision" (emphasis in original)).  Similarly, in *Muñoz*, the Supreme Court reaffirmed the doctrine of consular non-reviewability, holding the doctrine barred judicial review of a consular officer's denial of plaintiff noncitizen's visa application, *see generally Muñoz*, 602 U.S. 899, but focused on "the action of an executive officer 'to admit or to exclude a[] [noncitizen],'" *id.* at 908 (citation omitted), which is a different circumstance than that at issue here, as defendants concede, where "the basis for Plaintiff's challenge is not of final agency action, but rather allegations of agency *inaction*," Defs.' Mem. at 13 n.3 (emphases added).  *See also Azeez v. Murphy*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *2 (D.D.C. Aug. 23, 2024) (recognizing the same); *Baygan*, 2024 WL 3723714, at *5 (same).  Finally, defendants' invocation of *Kolesnikov v. Blinken*, No. 23-cv-1675 (TSC), 2024 WL 3638345, at *2 (D.D.C. Aug. 2, 2024), *see* Defs.' Mem. at 12-13, is equally unavailing given that the plaintiff in that case, unlike here, did not allege any delay due to administrative processing.

3292 (APM), 2024 WL 3887380, at *1 (D.D.C Aug. 20, 2024).  The court reasoned that "[w]hile Defendants cannot direct a particular *outcome* with respect to Plaintiff's visa adjudications, nothing precludes them 'from directing consular officers to *conclude* matters presented to them within a reasonable time.'"  *Fallahi*, 2024 WL 3887380, at *3 (emphasis added) (quoting *Al-Gharawy*, 617 F. Supp. 3d at 10); *see also Baygan*, 2024 WL 3723714, at *4 (post-*Karimova* suit finding the same).  Second, the Circuit in *Karimova* did "not decide whether th[e] principle of nonreviewability applies" in cases, such as the instant one, "which purport[] to challenge the timing rather than content of a consular visa decision."  *Karimova*, WL 3517852, at *6; *see De Belinay*, 2025 WL 671120, at *4 n.2 ("[*Karimova*] does not change this conclusion because it does not displace the principle that 'the doctrine of consular nonreviewability applies to challenges based on substance, not timing.'" (quoting *Azeez v. Murphy*, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *3 (D.D.C. Aug. 23, 2024)); *Giza*, 2024 WL 3967284, at *4 n.2 (D.D.C. Aug. 27, 2024) (recognizing the same and refusing to use consular nonreviewability as a bar to plaintiff's actions).

Finally, defendants insist that *Karimova* binds this district court.  Defs.' Mem. at 6 n.2.  *Karimova*, however, is a decision that the Circuit has *twice* determined should be unpublished.  *Karimova*, 2024 WL 3517852, at *1; Order, *Karimova v. Abate*, No. 23-5178 (D.C. Cir. Sept. 10, 2024), Doc. No. 2074062 at 1.  In this posture, the case "may be cited as precedent" under D.C. Circuit rules, D.C. Cir. R. 32.1(b)(1)(B), but the panel's decision to issue *Karimova* as unpublished reflects a determination that the decision has "no precedential value in that disposition," D.C. Cir. R. 36(e)(2), and did "not 'alter[], modif[y], or significantly clarif[y] a rule of law," *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (alterations in original) (quoting D.C. Cir. R. 36(c)(2)(B)) .  *See also Ahmed v. Blinken*, No. 24-cv-0153 (LLA), 2024 WL 4903771, at

*4 n.4 (D.D.C. Nov. 27, 2024) (recognizing *Karimova*'s lack of precedential value and refusing to apply it).  The fact that *Karimova* is unpublished has led some Judges on this Court to view the decision as requiring dismissal of visa mandamus cases on similarly pleaded factual allegations for failure to state a claim,  *see, e.g.*, *Ibrahim v. Spera*, No. 23-cv-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024), while others have proceeded to examine the merits of the sufficiency of the plaintiff's underlying unreasonable delay claim, *see, e.g.*, *Akter v. Flook*, No. 24-cv-146 (CRC), 2025 WL 661296, at *2 n.1 (D.D.C. Feb. 28, 2025), *Hajizadeh v. Blinken*, No. 23-cv-1766 (LLA), 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024).  This Court adopts the latter course.  *See Gundas v. Blinken*, No. 24-cv-1064 (RC), 2024 WL 5056375, at *6 (D.D.C. Dec. 10, 2024) ("[T]he Court finds here that it does not need to determine the extent to which *Karimova* disrupts prior decisions rejecting the Government's reliance on the consular non-reviewability doctrine, as [plaintiff's] claims fail on their merits."  (internal citation omitted)); *Momeni v. Blinken*, No. 23-cv-3421 (RCL), 2024 WL 4332604, at *5 n.5 (D.D.C. Sept. 27, 2024) (same); *Sharifishourabi v. Blinken*, No. 23-cv-3382 (RC), 2024 WL 3566226, at *4-5 (D.D.C. July 29, 2024) (same). *Sereshti*, 2024 WL 4625802, at *5 (same).[3]

### C.    Merits

Defendants provide in a footnote, without argument, explanation or effort, that "[a]pplying *TRAC* here would also lead to the dismissal of this suit," as "the complaint fails to

---

[3]    Defendants double-down on their argument that *Karimova* should be treated as binding and dispositive here, pointing to *Khaksari v. Chairman, Broad Board of Governors*, 451 F. App'x 1, 4 (D.C. Cir. 2011), Defs.' Mem. at 6 n.2, where a Circuit panel relied on D.C. Cir. R. 32.1(b)(1)(B), which provides that counsel "may . . . cite[] as precedent" unpublished decisions entered after January 1, 2002, to note that an unpublished decision "has the force of precedent."  *Khaksari*, 451 F. App'x at 4.  *Khaksari* is itself unpublished, however, and even a decision with precedential value based on persuasive reasoning falls short of having binding effect, particularly in light of published D.C. Circuit opinions holding that "[u]npublished opinion[s] . . . [have] no precedential effect with respect to other parties."  *Head v. Wilson*, 792 F.3d 102, 109 (D.C. Cir. 2015) (quoting *Nat'l Classification Comm. v. United States*, 765 F.2d 164, 170 (D.C. Cir. 1985)).  In any event, whether *Karimova* is "controlling or not," Defs.' Mem. at 6 n.2, for the reasons stated above in Part II.B., the facts of this case are distinguishable from *Karimova*, and for the reasons stated in Part III.C., plaintiff's claims fail on the merits.

state a claim for relief under the controlling standards" on the merits of whether plaintiff has experienced unreasonable delay. Defs.' Mem. at 2 n.1. Defendants instead defer challenging the sufficiency of the claim of undue delay, promising that they will "move for judgment on the pleadings" if their motion is denied at this juncture. *Id.* Whether this is some form of litigation gamesmanship to force resolution of this case only on the grounds raised by the government, or simply professional laziness on the part of the Civil Division of the U.S. Attorney's Office for the District of Columbia, this intentional, piecemeal approach to challenge the pleadings in more than one round of briefing unnecessarily expends judicial time and resources and imposes needless burdens on all parties. Defendants' strategy to forego an argument that could secure dismissal on obvious grounds under Rule 12(b)(6) and save it to secure dismissal at some later date on the pleadings under Rule 12(c) denigrates the over-arching goals of the civil procedural rules "to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. Though defendants' strategy does not result in waiver, under Rule 12(h)(1) and (2), of their preserved argument that plaintiff fails to state a claim for unreasonable delay, this tactic to try and force a resolution of the pending motion on only the grounds presented, is both unsuccessful and not appreciated.

Defendants are reminded that neither consular nonreviewability nor the existence of a non-discretionary duty are Article III jurisdictional issues that *must* be decided before reaching the merits. *See Am. Hosp. Ass'n v. Azar*, 964 F.3d 1230, 1246 (D.C. Cir. 2020) ("The law of our circuit allows a court to assume hypothetical *statutory* jurisdiction even if we cannot assume Article III jurisdiction." (emphasis in original)); *Khadr v. United States*, 67 F.4th 413, 425, 425 n.2 (D.C. Cir. 2023) (Randolph, J., concurring) (collecting cases and noting "we have often bypassed statutory jurisdiction to decide merits issues"); *Janay*, 743 F. Supp. 3d at 113 n.4

15

(collecting authority and recognizing the same in a similar case).[4]  "Dismissal based on consular

nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)."

*Baan Rao*, 985 F.3d at 1027; *see also Muñoz*, 602 U.S. at 908 n.4 ("[T]he doctrine of consular

nonreviewability is non-jurisdictional.").  Likewise, the requirement of a non-discretionary duty

is, at most, a statutory jurisdictional issue, "rather than an Article III concern."  *Rashidian v.

Garland*, No. 23-cv-1187 (ACR), 2024 WL 1076810, at *5 n.5 (D.D.C. Mar. 8, 2024); *see also

da Fonseca v. Emmel*, No. 23-cv-3300 (JEB), 2024 WL 519603, at *3 (D.D.C. Feb. 9, 2024)

(same); *Janay*, 743 F. Supp. 3d at 113 n.4 (same).  Courts, thus, may "address[] the merits where

doing so ma[kes] it possible to avoid a doubtful issue of *statutory* jurisdiction."  *Kramer v.

Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007) (emphasis in original); *see Janay*, 743 F. Supp. 3d at

113 n.4 (collecting authority and coming to the same conclusion in a similar case).

        Moreover, despite defendants purposely omitting argument as to the sufficiency of

plaintiff's undue delay claim, this Court is not bound to resolve the pending motion solely on the

grounds defendants have chosen.  Instead, the Court may "*sua sponte* dismiss a claim pursuant to

Rule 12(b)(6) without notice where it is 'patently obvious' that the plaintiff cannot possibly

prevail based on the facts alleged in the complaint.'"  *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d

122, 127 (D.C. Cir. 2012) (quoting *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C.

Cir. 1990)).  "In determining whether a complaint fails to state a claim," a court "may consider

---

[4]        Reasonable minds have come to competing conclusions on the propriety of assuming statutory jurisdiction
to reach the merits of a claim.  *Compare Mowrer v. U.S. Dep't of Transp.*, 14 F.4th 723, 745 (D.C. Cir. 2021)
(Randolph, J. concurring) ("Supreme Court decisions and decisions of this court hold in the clearest possible terms
that there is no rigid rule requiring a federal court to decide statutory jurisdiction (as distinguished from Article III
jurisdiction) before getting to the merits."), *with Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, 143 S.
Ct. 2027, 2028 (2023) (Thomas, J., dissenting from the denial of certiorari) ("Although some cases might cry out for
decision on the merits, and sometimes it is convenient to assume away difficult jurisdictional questions to decide a
case on easier merits grounds, courts' threshold duty to examine their own jurisdiction is no less obligatory in such
cases."  (citations, brackets, and internal quotation marks omitted)).  The law in this Circuit, however, is clear: "a
court [may] assume hypothetical statutory jurisdiction even if [it] cannot assume Article III jurisdiction," *Am. Hosp.
Ass'n v. Azar*, 964 F.3d 1230, 1246 (D.C. Cir. 2020), which defendants do not dispute, *see generally* Defs.' Mem.

only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [courts] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997)).  In this case, additional briefing is unnecessary, and analysis of the merits is ripe for consideration because the record provides sufficient, discernible, and undisputed facts to evaluate plaintiff's claims for unreasonable delay of adjudication of his visa application.  *Cf. Fontaine v. JPMorgan Chase Bank, N.A.*, 42 F. Supp. 3d 102, 105 (D.D.C. 2014) ("[I]f the complaint's failure to state a claim for the purpose of Rule 12(b)(6) 'is patent, 'it is practical and fully consistent with plaintiffs' rights and the efficient use of judicial resources' for the court to act on its own initiative and dismiss the action.'"  (quoting *Bauer v. Marmara*, 942 F. Supp. 2d 31, 37 (D.D.C. 2013))); *Ikon Glob. Mkts., Inc. v. CFTC*, 859 F. Supp. 2d 162, 168 n.4 (D.D.C. 2012) (granting motion to dismiss *sua sponte* even though defendants only moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction).

    "To state a claim for unreasonable delay, Plaintiffs must first allege that the agency 'failed to take a discrete agency action that it is required to take,' and, second, that the delay was unreasonable." *Da Costa*, 80 F.4th at 340 (internal citation omitted) (quoting *Norton*, 542 U.S. at 64).  To evaluate whether a delay in agency action is unreasonable, the court balances the six "*TRAC*" factors:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests

prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency latitude in order to hold that agency action is unreasonable delayed.

*TRAC*, 750 F.2d at 80 (cleaned up). *See also Da Costa,* 80 F.4th at 340 ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors." (citing *TRAC*, 750 F.2d at 80)). In cases challenging unreasonable agency delay, "the standards for obtaining relief" under the APA and the Mandamus Act are "essentially the same." *Shinseki*, 599 F.3d at 659 n.6; *see Norton*, 542 U.S. at 63-64.

### 1.    *TRAC Factors 1 and 2*

The first and second *TRAC* factors weigh in defendants' favor because the delay in adjudicating plaintiff's visa application, a little over four months, is not unreasonable. These two factors review "the extent of and reasons for" agency delays. *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024). The first factor—whether the agency follows a rule of reason—is considered the "most important," *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008), and often evaluated in conjunction with the second *TRAC* factor—whether "Congress has established a timetable," *Mukkavilli v. Jaddou*, No. 23-5138, 2024 WL 1231346, at *1 (D.C. Cir. Mar. 22, 2024) (per curiam) (citing *TRAC*, 750 F.2d 80).

In analyzing the first *TRAC* factor, courts "evaluate the length of delay in light of 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency,'" *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council, Inc v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)), and "the level of disproportionality . . . previously held sufficient to grant relief," *id.* at 344. Congress typically grants agencies "wide" discretion in their visa processing timelines, and, in fact, Congress has set

"no deadline or timeframe" within which the State Department or a consular officer must re-adjudicate visa applications. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017).

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020) (quoting *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)). While "[t]here is 'no *per se* rule as to how long is too long,'" *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)), "[d]ecisions regarding the admission of foreign nationals are granted an especially wide degree of deference, as they frequently implicate 'relations with foreign powers,'" *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702-03 (2018)). This deference has led "judges in this District [to] 'consistently' h[old]" that "two-to three year [delays]" "do[] not amount to unreasonable delay." *Tahavori v. Blinken*, No. 23-cv-1460 (JDB), 2024 WL 1328546, at *5 (D.D.C. Mar. 28, 2024) (quoting *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022)); *see also Da Costa*, 80 F.4th at 339-40, 342 (finding a four-and-a-half-year delay not unreasonable); *Abdullahi v. Blinken*, No. 23-cv-3900 (RC), 2024 WL 4880423, at *7 (D.D.C. Nov. 25, 2024) ("Defendant[s'] delays of approximately twenty, twenty-one, and twelve months are not unreasonable."); *Azeez*, 2024 WL 3924565, at *5-6 (finding seventeen-month delay not unreasonable); *Niyomwungere*, 2024 WL 5075827, at *4 "[T]he approximately two-year delay . . . tips in favor of Defendants.").

Nothing in plaintiff's complaint gives reason to depart from this precedent, and any material harm uniquely suffered by the plaintiff as a result of the delay is addressed by the other *TRAC* factors. The visa application at issue was placed in administrative

processing on March 7, 2024, and was pending for just over four months when plaintiff sued on July 10, 2024. This is far too short a delay to be unreasonable, and thus "[f]inding an unreasonable delay here, when less time has passed than in [collected cases], would upset the rule prior cases have established." *Li v. Heller*, No. 23-cv-3025 (DLF), 2024 WL 3400111, at *6 (D.D.C. July 12, 2024) (citations omitted). Taken together, the first and second factors weigh in defendants' favor.

### 2.    *TRAC Factor 4*

The fourth *TRAC* factor considers whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. This factor "carries significant weight" in the *TRAC* analysis. *Mashpee*, 336 F.3d at 1100. Granting expedited agency action is considered inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants,'" with "no net gain" in overall adjudication gained. *Da Costa*, 80 F.4th at 343-44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016), and *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). In particular, "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005).

Given limited government resources, granting the relief plaintiff seeks with respect to his visa application would "necessarily come at the expense of other similarly situated applicants," *Da Costa*, 80 F.4th at 344 (quotation marks and citation omitted), and "would require the State Department to 'reorder[] [its] priorities' in a case where the 'agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way,'" *Sharifishourabi*, 2024

WL 3566226, at *9 (quoting *In re Barr Labs.*, 930 F.2d at 76).  As a government entity, it is

clear the State Department has limited resources to manage the "troubling" visa application

backlog, *R2 Techs. Corp. v. Rubio*, No. 24-cv-369 (LLA), 2025 WL 436306, at *7 (D.D.C. Feb.

7, 2025), and, on the ground, "it is readily apparent that '[c]onsular processing capacity is

presently a zero-sum game,'" *Giza*, 2024 WL 3967284, at *7 (alteration in original) (quoting *Lee

v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024)).  The D.C.

Circuit recognizes "no basis for reordering agency priorities," *In re Barr Lab'ys*, 930 F.2d at 76,

and, as such, this factor weighs in favor of defendants.  *See, e.g.*, *Abdullahi*, 2024 WL 4880423,

at *8 ("Although the underlying administrative process in this case . . . does not appear to be

addressed or resolved in a first-in-first-out basis, compelling agency action on Plaintiffs'

applications would 'impose offsetting burdens on equally worthy' applicants by effectively

putting Plaintiffs 'at the head of the queue,' thereby 'mov[ing] all others back one space and

produc[ing] no net gain.'"  (alterations in original) (quoting *In re Barr Lab'ys*, 930 F.2d at 73,

75)); *Niyomwungere*, 2024 WL 5075827, at *5 ("No matter where Plaintiff lies in the queue, the

relief he seeks would 'inevitably entail a 'judicial reordering' of the Department's priorities.'"

(quoting *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *7 (D.D.C. Sept. 18,

2023))).

### 3.    *TRAC Factors 3 and 5*

"The third and fifth factors are often considered together, and require the Court to

consider plaintiffs' interests, health, and welfare." *Momeni*, 2024 WL 4332604, at *6 (quoting

*Chowdhury v. Blinken*, No. 21-cv-1205 (RCL), 2022 WL 136795, at *4 (D.D.C. Jan. 14, 2022)).

While "the individual health or welfare of th[e] specific plaintiff is most relevant when

evaluating TRAC factors three and five," *Khan v. Bitter*, No. 23-cv-1576 (BAH), 2024 WL

756643, at *5 (D.D.C. Feb. 23, 2024), the third factor also looks to the impact on others from granting plaintiff's demanded relief, requiring attention to the "many others [who] face similarly difficult circumstances as they await adjudication of their visa applications," *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168-69 (D.D.C. 2021) (citation and internal quotation mark omitted). Accelerated adjudication of plaintiff's visa application would necessarily divert resources from others. These interests, however, are best analyzed under factor four, discussed *supra* Part III.C.2. *See Azeez*, 2024 WL 3924565, at *5 (recognizing the same).

These factors slightly weigh in defendants' favor. As alleged, the delay has caused plaintiff and his wife to "experience[] . . . severe personal, emotional, and financial hardship." Compl. ¶ 40. In addition to being unable to start his job in the United States, Compl. ¶ 4, his wife has been unable to "pursue her dreams" of continuing her education here as well, *id.* While this has led to financial distress, *id.* at ¶ 5, "this case is not one where, for example, the plaintiff is 'separated from his children and wife' pending the adjudication of his visa," *Musaleev v. Bitter*, No. 24-cv-1100 (TJK), 2025 WL 315148, at *7 (D.D.C. Jan. 28, 2025) (quoting *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020)). *See also Gundas*, 2024 WL 5056375, at *9 ("Seeking employment-based admission to the United States necessarily entails some amount of career, economic, and educational uncertainty."). "Unlike in some other cases where prolonged family separation or underlying health concerns tied specifically to the delay at issue drove courts to find that *TRAC* factors three and five weighed in [a plaintiff's] favor, [plaintiff and his wife] live[] together in [Oman] and do[] not face separation or injury to health because of further delay." *Gundas*, 2024 WL

5056375, at *9. As such, plaintiff's allegations are "insufficient to tip the scales in his favor and, instead, . . . the third and fifth *TRAC* factors tilt at least slightly towards" defendants. *Id.*[5]

### 4.  *TRAC* Factor 6

The sixth and final *TRAC* factor considers whether "any impropriety lurk[s] behind agency lassitude." *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)). This is not essential, however, as "the court need not 'find any impropriety . . . to hold that agency action is 'unreasonably delayed.'" *Id.* (quoting *Pub. Citizen*, 740 F.2d at 34).

At most, plaintiff contends the information the Department of State has provided to them has not been "meaningful." Compl. ¶¶ 24-27. This alone is not an accusation of "impropriety" or bad faith, but regardless, "the lack of plausible allegations of impropriety does not weigh against [plaintiff]," and the sixth factor is thus neutral and does not favor either side. *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).

### 5.  *TRAC* Factors Considered in Totality

Balancing all six *TRAC* factors, plaintiff has not stated a claim of unreasonable delay under the Mandamus Act or the APA. In other cases, delays in visa processing of much longer duration than presented here have resulted in same conclusion. *See, e.g.*, *Da Costa*, 80 F.4th at 339-40, 342 (finding a four-and-a-half-year delay not unreasonable); *Azeez*, 2024 WL 3924565, at *5-6 (finding seventeen-month delay not unreasonable); *Mashaghzadehfard v. Blinken*, No. 23-cv-3164 (RJL), 2024 WL 4198689, at *5-6 (D.D.C. Sept. 16, 2024) (finding nineteen month

---

[5]    Plaintiff alleges that his "wife was pregnant and recently lost the baby," and that he "had hoped to be in the United States to get professional medical assistance during her early stages of pregnancy." Compl. ¶ 4. This is understandably upsetting to plaintiff, but no allegation suggests that the delay in processing his visa caused this personal loss, nor that necessary medical treatment was only available in the United States, and thus this circumstance does not tip the factors in plaintiff's favor. *See Da Costa*, 80 F.4th at 345 (holding that "health and welfare harms" must be "link[ed] [to] the delayed adjudication").

delay not unreasonable); *Rahimian v. Blinken*, No. 22-cv-785 (BAH), 2023 WL 143644, at *7-10

(D.D.C. Jan. 10, 2023) (finding forty-one month delay not unreasonable); *Zaman v. U.S. Dep't of*

*Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6-8 (D.D.C. Nov. 16, 2021)

(finding forty-two month delay not unreasonable).  The relatively minimal delay, prior case law,

the fact that granting plaintiff's relief would merely reorder his visa application in the queue, and

his failure to allege facts to have factors three and five weigh in his favor, all support the

conclusion that the delay in adjudication of plaintiff's visa application is not unreasonable.  In

these situations, "the government's interests in balancing its own priorities" outweighs the

individual harm done to plaintiff as he awaits a final decision.  *Milligan*, 502 F. Supp. 3d at 320

(quoting *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020)).

 With sympathy to plaintiff and his wife for suffering the consequences of the "'troubling

backlog' of applications 'waiting for . . . adjudication,'" *Musaleev*, 2025 WL 315148, at *7

(quoting *Da Costa*, 80 F.4th at 344), the circumstances alleged here are insufficient to prioritize

the processing of their visa applications over many other individuals and families facing

similarly difficult circumstances as they await immigration decisions.  *See Burwell*, 812 F.3d at

192 (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing

the plaintiffs to jump the line, functionally solving their delay problem as the expense of other

similarly situated applicants").

 Plaintiff's complaint must thus be dismissed for failure to state a claim.

## IV. CONCLUSION

 For the foregoing reasons, defendants' motion to dismiss is granted *sua sponte* on

grounds not presented because defendants intentionally ignored them.  Plaintiff's complaint is

dismissed without prejudice for failure to state a claim on which relief can be granted.  An Order consistent with this opinion will be filed contemporaneously.

Date: March 11, 2025

_____
**BERYL A. HOWELL**
United States District Judge